UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LINDA JACOB and CHRISTOPHER WATSON, individuals and on behalf of all parties similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRIDE TRANSPORT, INC., a Corporation.<br><br>Defendant. | Case No. 16-cv-06781-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; AND GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>**[RE: ECF 29, 31]** |

On February 22, 2018, the Court heard Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards. The motions are GRANTED for the reasons discussed below.

## I.   BACKGROUND

Plaintiff Linda Jacob filed this action in the Santa Cruz County Superior Court on May 31, 2016, asserting state law wage and hour claims on behalf of herself and other truck drivers employed by Defendant Pride Transport, Inc., a company which provides refrigerated transportation services. Compl., Exh. 1 to Notice of Removal, ECF 2. Jacob subsequently filed the operative first amended complaint ("FAC") in the state court, adding Plaintiff Christopher Watson as a named plaintiff. FAC, Exh. 2 to Notice of Removal, ECF 2. Plaintiffs allege that they performed manual labor consisting of driving Pride's trucks and transporting goods for Pride; they did not utilize any independent discretion, judgment, or management decisions with respect to matters of significance; and thus they were entitled to minimum wages, meal periods, and rest periods under California Law. FAC ¶ 1. Plaintiffs allege that instead they were paid by piece-rate only, were not paid for non-production work time, and were not provided with paid meal and rest breaks. *Id.*

Plaintiffs sue on behalf of themselves and a class of individuals who drove routes in California for Pride during the class period. FAC ¶ 3. The FAC asserts claims for: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) failure to pay minimum wages, Cal. Lab. Code §§ 1194, 1197 and 1197.1; (3) failure to provide accurate itemized statements, Cal. Lab. Code § 226; (4) failure to pay wages when due, Cal. Lab. Code §§ 201, 202, 203; (5) failure to reimburse employees for required expenses, Cal. Lab. Code § 2802; and (6) violation of the Private Attorneys General Act, Cal. Lab. Code §§ 2698, et seq.

Defendant Pride removed the action to federal district court on November 23, 2016 under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Notice of Removal, ECF 2. Before the Initial Case Management Conference was held, the parties notified the Court that they had reached settlement. Joint Notice, ECF 15. The settlement agreement defines the settlement class as:

> All current and former truck drivers who are or were employed as truck drivers by Defendant at any time during the period from May 31, 2012, to December 28, 2016, who performed any work in California and who were paid on the basis of activity-based work.

Settlement Agreement ¶ 8, Exh. 1 to Nordrehaug Decl., ECF 20-1. The settlement class period is defined as the period from May 31, 2012 through December 28, 2016. *Id.* ¶ 9. The settlement is a "checks cashed" settlement which does not require the submission of claim forms. *Id.* ¶ 12. Instead, Defendant Pride will make payments to class members according to a specified formula based on the number of pay periods worked and whether the class member was a resident of California. *Id.* Those payments will be transmitted to class members by a claims administrator. *Id.* ¶ 13.

Defendant Pride has agreed to pay a "Gross Settlement Amount" of $475,000. Settlement Agreement ¶¶ 13, 15, Exh. 1 to Nordrehaug Decl., ECF 20-1. Prior to issuance of payment to class members, the following monies will be deducted from the Gross Settlement Amount: (1) Class Counsel's fees of $118,750 (subject to Court approval); (2) Class Counsel's litigation costs, not to exceed $15,000 (subject to Court approval); (3) enhancement awards of $10,000 to each named plaintiff; (4) a payment to the California Labor and Workforce Development Agency in the amount of $3,562.50; (5) the employee portion of payroll taxes; and (6) claims

administration costs not to exceed $25,000. *Id.* ¶ 14. The remaining monies, referred to as the "Net Settlement Amount," will be distributed to class members on a pro rata basis based on the number of weeks worked during the class period, with 80% of the Net Settlement Amount distributed to California resident class members and 20% of the Net Settlement Amount distributed to non-California resident class members. *Id.* ¶¶ 14, 16.

On October 17, 2017, the Court issued an order which: granted preliminary approval of the class action settlement; conditionally certified the class for settlement purposes; appointed Plaintiffs as class representatives; appointed Plaintiffs' counsel as Class Counsel; approved Plaintiffs' proposed notice plan with minor modifications required by the Court; and set February 22, 2018 as the hearing date for Plaintiffs' motions for final approval of the class action settlement and for attorneys' fees. *See* Order Granting Preliminary Approval of Settlement, ECF 28.

The claims administrator mailed notice of the settlement to 1,860 class members on November 6, 2017. Blumenthal Decl. ¶ 7(d), ECF 31-1. The notice informed class members of procedures for opting out or objecting to the settlement. *Id.* Only one opt-out was received, and no objections were received. *Id.* ¶ 7(e).

On February 22, 2018, the Court heard Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards. The Court indicated on the record that both motions would be granted.

**II.     MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (discussing requirements for class certification in settlement context); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998) (discussing requirements for fairness finding). The two determinations are separate: "A court may not justify its decision to certify a settlement class on the ground that the proposed settlement is fair to all putative class members." *Hyundai*, 881 F.3d at 694.

**A.  The Class Meets the Requirements for Certification under Rule 23**

A district court which certifies a class for settlement purposes "must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Hyundai*¸ 881 F.3d at 690 (internal quotation marks and citation omitted).  "A district court's certification must be supported by sufficient findings to be afforded the traditional deference given to such a determination." *Id.* (internal quotation marks and citation omitted).

Plaintiffs addressed the Rule 23 requirements in their motion for preliminary approval of the class settlement, showing that certification is appropriate under Rule 23(b)(3).  *See* Pls.' Motion for Preliminary Approval at 15-20, ECF 20.  Based on that showing, the Court conditionally certified the class and granted preliminary approval of the class settlement.  *See* Order Granting Preliminary Approval of Settlement, ECF 28.  However, the Court's preliminary approval order did not recite the Court's findings with respect to Rule 23 in any detail.  *See id.* Accordingly, the Court articulates those findings here.

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchen*, 521 U.S. at 614.  Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual

4

members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that because there are 1,860 class members, only one of whom has opted out, individual joinder of all class members would be impracticable. *See* Blumenthal Decl. ¶ 7(d), (e), ECF 31-1 (stating that class notice was sent to 1,860 individuals and only one opt-out was received). The commonality requirement is met because the key issues in the case are the same for all class members. For example, Plaintiffs assert that Defendant Pride had a uniform practice of failing to provide truck drivers with meal and rest periods; that practice was unlawful under California law; and all class members were subjected to that challenged practice. *See* Nordrehaug Decl. ¶ 26(b), ECF 20-1. Plaintiffs' claims are typical of those of the class, as both Jacob and Watson assert that they drove for Pride and were not provided meal and rest periods. *Id.* ¶ 26(c); *see also Hanlon*, 150 F.3d at 1020 (typicality requires only that the claims of the class representatives are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Jacob and Watson from acting as class representatives. Accordingly, the Rule 23(a) requirements are satisfied on this record.

With respect to Rule 23(b), the predominance inquiry "simply tests whether questions common to the class are more prevalent or important than individual ones, a standard which is readily met in consumer class actions." *Hyundai*, 881 F.3d at 708 (internal quotation marks and citations omitted). Common issues "which turn on a common course of conduct by the defendant, establish predominance in nationwide class actions." *Id.* at 708-09. The present action turns on Defendant Pride's common course of conduct with respect to truck drivers, for example, whether Pride uniformly failed to provide truck drivers with meal and rest periods. All claims based on

5

Pride's conduct are asserted under California law. Given these commonalities, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue. Accordingly, the Court concludes that the requirements of Rule 23(b)(3) are met and thus that certification of the class for settlement purposes is appropriate.

### B. The Settlement is Fair, Reasonable, and Adequate

Having determined that class certification is appropriate, the Court must evaluate the substance of the class action settlement. Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by the "*Hanlon* factors" articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp. Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

The Court is satisfied that the class members were provided with adequate notice. Prior to the preliminary approval hearing, the Court carefully examined the proposed class notice and found some aspects of the proposed notice to be unclear. The Court required Plaintiffs to make certain changes to the notice to clarify the procedures for opting out of the settlement. The

6

modified notice was mailed by the claims administrator on November 6, 2017 to all class members. Blumenthal Decl. ¶ 7(d), ECF 31-1.

As to the substance of the settlement, the Court begins its evaluation by noting that there is no indication of collusion and the settlement is the result of arms-length negotiations between experienced counsel with the aid of a respected mediator with experience in wage and hour class actions. *See* Blumenthal Decl. ¶ 6(f), ECF 31-1. "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010) (citing 4 Newberg § 11.41).

Prior to settlement discussions, the parties undertook substantial investigation of Plaintiffs' claims. Blumenthal Decl. ¶¶ 6(d), (e). Among other things, the parties informally exchanged documents and information regarding Defendant Pride's policies, the class composition, and payroll information. *Id.* Each side's attorneys evaluated the class members' claims, and counsel discussed their views of those claims, and defenses thereto, at multiple meetings and conferences. *Id.* ¶ 6(e). Class Counsel assembled data for calculating damages and retained an expert for the damages calculation. *Id.* Based on the parties' investigation and discussions, they determined that early resolution was possible. *Id.* ¶¶ 6(d), (e). Thus although the case was in its early stages, Plaintiffs have demonstrated that both sides had enough information to evaluate it for purposes of settlement.

Absent settlement, it is likely that litigation would have continued for a significant period of time. Such litigation would have resulted in substantial expenditure of resources by both sides, particularly if the case reached the class certification stage. Plaintiffs also would have risked dismissal of some or all of their claims and the possibility that the putative class would not be certified.

Plaintiffs calculate the maximum potential value of their claims to be $1,137,554, assuming all claims could be proved in full at trial. Blumenthal Decl. ¶ 8(e). The Gross Settlement Amount represents 41% of the calculated maximum potential claims value. *Id.* While

it was not apparent from the parties' filings how much each class member is likely to receive, Plaintiffs' counsel represented at the final approval hearing that each class member will receive approximately $157, representing a blended estimate for both California and non-California class members. California class members could receive as much as $2,400. The Court concludes that this is an excellent result. The Court's favorable view appears to be shared by class members, as only 1 individual has opted out of the settlement and no class members have objected.

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and the settlement is fair, adequate and reasonable.

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Attorneys' Fees and Costs

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942. An attorney also is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

Plaintiffs seek an award of attorneys' fees totaling $118,750, which represents 25% of the "Gross Settlement Amount" of $475,000, as well as $14,276.02 in expenses incurred in prosecuting the litigation. The Court has no hesitation in approving an award of expenses in the requested amount of $14,276.02. Class Counsel has submitted a declaration stating that counsel incurred $14,276.02 in actual expenses, and that all of those expenses reasonably were incurred in prosecution of this litigation. *See* Blumenthal Decl. ¶ 9, ECF 29-1. The itemized list of expenses

provided by counsel supports a conclusion that the expenses were reasonably necessary. *See* Exh. 3 to Blumenthal Decl. The requested amount of $14,276.02 is consistent with the notice sent to the class, which stated that the Court tentatively had approved payments from the Gross Settlement Amount for attorneys' fees "and an additional amount to reimburse actual litigation costs billed to the Plaintiffs not to exceed $15,000." Class Notice, ECF 31-1.

The Court likewise concludes that an award of attorneys' fees in the requested amount of $118,750 is quite reasonable. Using the percentage-of-recovery method, the amount requested represents 25% of the Gross Settlement Amount, which in this circuit is "the benchmark for a reasonable fee award." *Bluetooth*, 654 at 942. An award of this amount is supported by a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar calculation may provide a cross-check on the reasonableness of a percentage award in common fund case). When Plaintiffs filed their fees motion, Class Counsel had expended more than $86,601.50 in attorney time at Class Counsel's normal billing rates. *See* Blumenthal Decl. ¶ 8 & Exh. 3, ECF 29-1. Based on that lodestar, application of a multiplier of 1.37 would be required to reach the requested amount of $118,750. However, at the hearing Class Counsel represented that substantial work has been done since the fees motion was filed, which has resulted in the lodestar being increased to approximately $109,000. Because no significant multiplier would be required to reach $118,750, a lodestar cross-check confirms the reasonableness of a benchmark award of 25% of the recovery in this case.

**B.  Service Awards**

Plaintiffs request service awards of $10,000 each. Service awards, also referred to as incentive or enhancement awards, "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

In evaluating a request for a service award, the district court should consider "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree

to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks and citation omitted) (alterations in original). The district court also must "consider the proportionality between the incentive payment and the range of class members' settlement awards." *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015). Where there is a "very large differential in the amount of damage awards between the named and unnamed class members," such differential must be supported by the record. *Staton v. Boeing Co.*, 327 F.3d 938, 978 (9th Cir. 2003).

Class Counsel has submitted a declaration describing the efforts and assistance provided by named Plaintiffs Jacob and Watson in this case. *See* Blumenthal Decl. ¶ 10, ECF 29-1. Plaintiffs worked on the case for more than a year, providing valuable documents and information to Class Counsel. *Id.* They also assumed the risk that they could be counter-sued by Pride, liable for Pride's costs if they did not prevail, and/or blacklisted by other employers. *Id.* They were involved in the settlement negotiations which ultimately resolved this case. *Id.*

There is a substantial differential between the $10,000 service awards and the maximum $2,400 recovery which will be obtained by class members. The Court finds that the differential is justified by Plaintiffs' contributions to this case, the significant benefit to the class in the form of cash payments to class members, and the risks Plaintiffs undertook to obtain that benefit.

A service award of $10,000 falls at the high end of the range of service awards typically granted in this district. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000.") (collecting cases). However, other judges in this district have granted similar service awards in wage an hour cases. *See, e.g., Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (awarding $10,000 service awards to named plaintiffs in wage and hour class action where average recovery for class members ranged from $956.18 to $4,253.45).

Having considered this guidance and the record as a whole, the Court concludes that the requested $10,000 service awards are appropriate in this case.

Plaintiffs' motion for attorneys' fees, costs, and service awards is GRANTED.

**IV.  ORDER**

For the foregoing reasons,

(1) Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED;

(2) Plaintiffs Motion for Award of Attorneys' Fees and Costs and Service Awards is GRANTED; and

(3) The Clerk shall close the file pursuant to this order and the Order and Final Judgment issued simultaneously.

Dated:  March 21, 2018

_____
BETH LABSON FREEMAN
United States District Judge